The Supreme Court has expressly approved every feature of the county's legislative prayer practice, save one, that legislators pray. And no one now contends that legislator-led prayer falls outside the tradition practiced by over half the counties in this circuit alone. Because four rights cannot make a wrong, the judgment against the county should be reversed. First, the Supreme Court has expressly approved three of the four features of the county's practice. That the commissioners' prayers are consistently sectarian cannot undermine the constitutionality of the county's prayer practice because that is Town of Greece's central holding. That the commissioners use phrases such as, let us pray or please pray with me cannot condemn the practice either because the prayers in Town of Greece use almost identical language and it was merely a polite request rather than directing people to pray. Aren't you overlooking the crucial feature that we all know that in Town of Greece it was the guest ministers who were delivering the prayers and here it's the county commissioners themselves and don't the county commissioners more than any guest ministers represent the very embodiment of the state? Your Honor, let me begin with your question about what was central to Town of Greece and I think there are two aspects to what was central. I think the first key holding of Town of Greece that I think bears on your question concerning the prayer giver is that sectarian prayer is entirely constitutional and repudiated the county of Allegheny. Excuse me counsel, there's two red herrings in this case. One, the appellants, those who support them are trying to make it seem as if the court is out to in some way impair legislative prayer and that's simply not the case. It's all the features combined here because legislative prayer takes a variety of forms. Many of the legislators are religiously diverse. Many of the legislators give non-denominational prayers. Many legislators or county commissioners give prayers in the name of various faiths. All that is permitted but what happened here is you have 139 out of 143 meetings or 97% of the meetings over a period of years, the county commissioners, the elected officials, give an opening prayer in the name of one religious faith right before they sit down to business and it's not any one factor, it's a variety of factors and if this path is muster because it seems to me as you mentioned in oral argument, there's never been a case quite like this and if this path is muster, I think there are very few limitations on sectarian prayers in opening local government sessions and the question I want to ask is when you have 139 out of 143 meetings beginning with the same sectarian references, don't those in the audience come to perceive Christianity as the established faith or the prevailing faith? How could they have any other impression? Your Honor, there's a great deal in that question I want to respond as respectably and comprehensively as I can. Let me begin by noting that it was in fact this court's precedent in Joyner, in Turner, and other cases that stressed that the identity of the prayer giver, which after all, whether the prayer giver is a paid chaplain made an official of the legislature as in Marsh, whether it is a volunteer minister or religious leader as in town of Greece, or here the legislative, it is government speaking. I think that is the response I would give to one portion of your question. I think in terms of your question about the perception of the audience or others, I think Justice Kennedy's majority opinion and certainly his plurality opinion answered that question. When it said that what we're concerned with is an observer who understands the tradition and history of legislative prayer, which includes sectarian prayer, which granted not explicitly mentioned in town of Greece, but includes legislator led prayer. What case do you have where in 139 out of 143 meetings, the same sectarian references are made, not by guest ministers, but by the county commissioners right before they sit down to business. Is there any case really quite like this? Your Honor is correct that there is, just as until town of Greece was decided and approved the practice of rotating volunteer ministers, you had Marsh. So the answer to my question is this case stands alone. I would say, Your Honor, we don't have a case, but I would respectfully disagree that the practice is somehow unusual. As my friend, the Solicitor General, and others submitted in their amici brief, this practice of exclusively legislator led prayer. Now, if we want to stand the lens out and look more broadly at legislator led prayer, that is profuse throughout legislators at every level of state, local, and federal. How many of the prayers in town of Greece were Christian? Virtually all of them. 100%? Yes, Your Honor, until the litigation was brought, and when the litigation was brought. That's correct, Your Honor. I would also follow up by saying that in Marsh, the prayers in Marsh that were given over a period of 16 years by a Presbyterian minister were also Christian. And as in town of Greece, the minister in that case, Reverend Palmer, at the request of a legislator, did cease using the name of Jesus. But the prayers up until then were consistently Presbyterian. The only distinction between this case and town of Greece is the fact that the prayer is spoken by a legislator instead of a hired representative, as in Marsh, or a volunteer, as in Greece. That is correct. And so the question then turns on is the fact of who gives the prayer change it from a non-establishment to an establishment of religion under the First Amendment? Yes, Your Honor. And you argue that it doesn't matter who says the prayer because it's still not establishing the religion. It's speaking the custom and practice of opening a legislative session with prayer. That is correct, Your Honor. We believe that this Court's cases in particular paved the way for that in making it clear. There was some indication in the record, at least there were some highlights, that some of these prayers could be characterized as proselytizing. That is advocating a specific religion to be favored by the county commissioners. I guess two-part question. Do you concede that that's accurate? Does it rise to the pattern that might be suggestive of a problem here? How do you respond to that? Your Honor, first, we do not concede that any of the prayers here individually rise to a level of proselytization, as that term is understood in Martian tenebris. But even if one were to disagree with us on that, we certainly don't think that the prayers would rise to the level of what Justice Kennedy referred to as a pattern or practice of prayers over time that exploits the prayer opportunity. So your position is that those four or five, I think there were four or five that were highlighted in the record, those are aberrations? They don't reflect the nature of the prayers in general? Your Honor, I wouldn't call them aberrations. I think the most that can be said by my friend on the other side is that they come closer to that line than the vast bulk of the other prayers that are in the record. What about the prayers that say, we'd like to thank you for the virgin birth, we'd like to thank you for the cross of Calvary, we'd like to thank you for the resurrection, and that wasn't the only prayer that went into the explicit tenets of Christian doctrine. There were a number of the prayers that talked quite explicitly about particular tenets and aspects of one religious faith. Your Honor, we certainly don't dispute that the prayers in this case were sectarian. And I think what Your Honor is highlighting is the sectarian nature of the prayer. Was there any difference between the sectarian nature of these prayers and the ones that are in the record from the town of Greece? No, Your Honor, there's no difference between these prayers in the town of Greece or in Marsh. I think you find remarkably similar prayers in the record in both. And again, we do not dispute that we're talking about sectarian language here. The difference is the legislators themselves are giving the prayers as opposed to somebody else. Yes. How would you define proselytizing? I'm over here behind the TV. I know you can't see me. How would you define proselytizing? I would define proselytizing as inducing someone to convert to one's own faith. That's how I would define proselytizing. I think that definition of proselytizing is consistent with what Justice Berger said. And what about open our hearts to Christ's teachings and enable us to spread His message amongst the people we know and love through our applying of the sacred word in our everyday lives?  Clearly sectarian, Your Honor. I don't think it's proselytizing in the sense that there's no – Just spread the word? Let us spread the word, which could be a reference to let us spread the word. There's nothing in that prayer, which I agree that prayer comes closer. It may come closer to the one of the others. I don't believe that prayer crosses it. There's nothing in that prayer, Your Honor, asking, seeking to induce other people, let's say, from talking in the Christian faith to accept Jesus Christ as their Savior. Well, then let's look at Commissioner Berger on December 3rd, 2007, where he says, there's only one way to salvation, and that is Jesus Christ. Are you saying that is not proselytizing? I don't believe that's proselytizing. I agree with you, again, that comes closer to the line, but even if – What's an example of a proselytizing prayer, then, from your perspective? I think an example of a proselytizing prayer, from our perspective, would be one that, say, for example, said, I pray that any in the audience today would stand and rise and accept Jesus Christ into your heart to become my Lord and Savior. I'd like to share a prayer that I found preparing for this in March that is very similar that wasn't proselytizing. I'd like to follow up, if I could. Yes, Your Honor. The fact that the Supreme Court in the town of Greece makes the issue that the requests to join in prayer come not from the town leaders, but from the guest ministers. And I think that this raises the issue of implicit coercion. And if you have people saying that Jesus Christ is the only way to salvation in their prayers, and it's coming from the person who's the decision-maker in an intimate local government setting, how can I feel as the president of a synagogue if I'm going in and asking for a variance to my parking lot, okay? And the people next door to me are St. James Catholic Church, and that conflicts with their bake sale hours, okay? And here the commissioner is saying there's only one way to salvation through Jesus Christ, and then also Commissioner Ford is saying on December 3rd, 2012, I pray that the citizens of Rowan County will put me first, that is Jesus Christ. How can I have any confidence that they don't believe they have to put the Catholic Church ahead of my synagogue? How am I not implicitly coerced into joining in the prayer? How can I feel as a citizen of that county when they have said that Jesus Christ comes first and we have to act to put him first, that I have any chance before the elective body of fair and equal consideration? May I answer? Thank you. Three responses to that, Your Honor. I think first the answer comes in what Justice Kennedy said in his controlling concurrence in town of Greece, that the observer knows the tradition of legislative prayer in this country, that sectarian references are part of that tradition. Second, that the fact that government is speaking, we know from Marsh and from town of Greece, it's all government speaking. And I think that is why Justice Kennedy made it clear that it takes more than one or two prayers. I also think that makes sense, certainly. But if I am a Jew and I am standing there and I am being asked to join in prayer, let us pray, us, not let me pray, let us pray, and I am being told that Jesus Christ is the only way to salvation and I don't believe in Jesus Christ. I have fundamental beliefs in religion, but not in Jesus Christ. How can I not be implicitly coerced to join in prayer, not withstanding culture, not withstanding a tradition? There are only ten citizens in the room. They all know I am a Jew. How can I not be implicitly coerced by the nature of the prayers and the identity of the prayer givers? Your Honor, I don't for a moment want to minimize feelings of discomfort, feelings of offense. Justice Kennedy made clear in his controlling concurrence that those do not rise to the level of constitutional coercion. And on this record, there is no evidence and no one has alleged that someone could not leave the room for the prayer, remain standing. In fact, the record says at JA-15 that most of those in attendance stood or bowed their heads for the prayer. So this record is even clearer than most, Your Honor, that the type of coercion of which you are talking simply doesn't rise to the level recognized by Justice Kennedy, and this record wouldn't support any such allegation. Does it matter that one of the commissioners expressly expressed animus outside the council meeting and said I'm sick and tired of being told by the minority what's best for the majority. We've come a long way the wrong way. We now call evil good and good evil. How does that figure into the mectipital? Certainly, and I think three responses to that. First, while regrettable, I think it's important to understand that that statement was not made in the context of legislative prayer or the legislative prayer practice. It was regarding an entirely separate issue. And I simply think, and again, I don't want to diminish that that's a regrettable remark, but I do think as a legal matter, as a constitutional matter, a remark like that is not sufficient to show that there was a pattern or practice of prayer here over time that exploited the prayer opportunity here. Judge Miles. Can I just ask you, I'm sorry, but we haven't had a chance. Yes, Your Honor. Along the way I've understood, both from your papers and today, that you relied pretty heavily on the tradition in this country about prayer in public events. Is that correct? Yes, as I believe Town of Brigham instructs the analysis to do. Yes, Your Honor. Do you think any distinction between tradition and present practice? It seems to me by definition, present practice can't be tradition. Tradition is what happened for a long period of time down to the founders. That's what they talk about in the Supreme Court, the earlier Supreme Court case. And so it seems to me that you sort of slid from tradition into present practice. And I don't think any Supreme Court case, or indeed any other case I know, recognizes that. Would you agree with me on that? I mean, you may have a point about present practice, but I just don't think it's tradition. Two points, Your Honor, and I think your question brings up an important question, which is what is the level of granularity or specificity at which a practice is determined to fall within the tradition? Okay. And so tradition, I think there's two ways to think about tradition. So building on that answer, I accept your answer. So could a county officer begin the prayer with the Apostle's Prayer? I believe so, Your Honor. We know that in the town of Greece there were guest ministers that began with the Lord's Prayer. I believe as long as it is solemn, respectful in tone, and does not rise to the level of denigrating or proselytizing, and even if one prayer standing alone would cross the line into proselytization and go beyond expressing what one believes. After all, Justice Kennedy did say that legislative prayer is an opportunity for legislators to express who and what they are. It's not the definition. One week it's the Apostle's Creed. The next week it's the Hail Mary. The week after that it's the Apostle's Creed again. It's the Gloria after that. All well-established prayers in Protestant and Catholic religions. I think the fact that a prayer, whether the prayers that you're saying are prayers from another faith tradition. No, we're talking only about one religion as we were in this case. Well, we know from Marsh and town of Greece that the fact that the prayers are all of one faith tradition is not a factor that takes it outside. No, it surely lies in the hypothetical to other religions. I accept that. It's all one religion. Even except for. Not general prayers that seem to me to be within the tradition of prayer in public utterances. I think unless the prayer practice over time is exploited to proselytize or denigrate, to preach conversion or threaten damnation, I don't believe prayers simply because they are associated with one faith across the constitutional line set out in Marsh and town of Greece. Comport with the county's tradition of legislative prayer. That's why I asked you about tradition to begin with because I don't remember any tradition of prayers that were the Apostle's Creed. Well, and I think that's precisely why Justice Kennedy also cautioned against parsing specific prayers. That the inquiry is at the division. Is it solemn? Is it respectful? Does it, the other characteristics that we've already thought. That to me is the relevant, and I believe in Justice Kennedy, that is the relevant tradition that is at issue. Thank you very much. Thank you. One thing I just want to ask, you were about to recite a prayer that you thought went just as far, if not further, in Marsh or another case. Yes, sir, in Marsh. Would you, for the record, would you cite that? Certainly. This is a Reverend Palmer prayer from February 14th of 1978. Turn our thoughts again to that book which alone reveals what man is to believe concerning God and what God requires of man. Thus informed, thus directed, we shall understand the spiritual laws by which alone peace shall be secured. Learn what is the righteousness that alone exalteth. For the sake of the world's peace and our own salvation, we pray in the name of Christ. Amen. And that, for the record, that appears in Reverend Palmer's amicus brief submitted in town of Greece at page 8. And again, that's a prayer from February 14th of 1978. Thank you. Thank you. Mr. Lear. Good morning, and may it please the Court, Albert Lear on behalf of the state amicus. I'd like to focus on the question of coercion, which is the second part of the two-part framework in Greece, because I think the research we presented in our briefs is directly relevant to Justice Kennedy's reasonable observer. I think that's an important part of the analysis that has been elided in our opponent's brief, is the fact that Justice Kennedy stresses that the coercion analysis, while fact-intensive, must begin and be assessed against the background presumption of what a reasonable observer would understand. And I think that, Judge Motz, gets into your question about tradition, historical tradition versus current practice. Our view of the Greece framework is that historical tradition is certainly relevant, sufficient, perhaps not necessary to the first part of the Greece analysis as to whether you are promoting a particular religion. We think, however, that historical tradition, while perhaps informative, is not necessary to the second part, the coercion analysis. Of course, you have to say that, because there is no tradition of the Supreme Court relying on a legislator-guided prayer. So you couldn't rely on tradition for the second part, could you? Well, you're right. It's a coercion argument. But let me just ask you, do you not agree, can there be any dispute, that a legislator-guided prayer is more coercive than a prayer led by a minister, an outside minister or rabbi? I don't think under Justice Kennedy's test, which is what I was about to – More coercive. Not that it's coercively unconstitutional, but just by definition, because the legislator is making decisions for the people that are there in a way that the minister is not. As a strictly psychological matter, perhaps. Not just as a strictly psychological matter, as a practical matter. And this is what troubles me so much, not about the prayers in general, but about the specific context here, because you have this intertwinement, both in terms of timing and in terms of what public business is undertaken, between government and the state, to an extent that the meetings, over time, express the view that Christianity is a preferred faith. And how can it not be coercive when you're talking about a forum, which is a citizen's most intimate relationship to government, more intimate than with state government, more intimate than the capital of the United States. And right after these prayers are given, there is no option on the part of the citizen to do anything but obey the tax rates that are set, the traffic rules that are put down, the zoning ordinances that are enacted, the school locations that are made, the municipal displays that are approved. The citizen has no choice but to obey those rules and ordinances. And when you start intertwining that with relentless sectarian references, some of which allude to specific doctrines that not all members of that community may share, how can that entanglement or intertwinement not be coercive? Your Honor, two answers to that. The first is I think it's very important to not commingle the two parts of Greece, the first part being whether 100 percent sectarian, 100 percent of a particular type of religion, crosses the line in promoting a particular religion. But the second answer, which is to get back to the presumption, because I think that that is a very important part of Justice Kennedy's analysis, what would a reasonable observer be familiar with? And that's, I think, where, again, this is Judge Mock, I think, why the current practices are important because when you're assessing under the reasonable person test that this Court applies in many other contexts too, I think the question is, what would the reasonable person who was sitting in this, you know, particular Rowan County Commission meeting be familiar with? And I think the fact that we have found that 144 of the 319 counties in the Fourth Circuit use exclusively lawmaker-led prayer, that phrases like let us pray or please stand or will you stand are quite common. And, in fact, in 9 of the 10 state legislative bodies, the presiding officer in the Fourth Circuit begins with this. Mr. Lynn, what would a reasonable person, a reasonable citizen sitting in the Commission meeting on April 15, 2013 think when the Commissioner prayed in Jesus' name that, quote, the decisions we make would honor and please you, end quote? What would that reasonable person who might, as Judge Keenan said, who's the president of the synagogue and wants to annex the parking lot, what might they think when the Commissioner they're about to ask that of just prayed that the decisions they make would honor and please Jesus Christ? Yes, Your Honor. And, again, I think what we look to is, you know, what is the tradition of those kinds of prayers and what the reasonable person would know of. And I think if you look to some of the prayers in Greece that are specifically cited in the Greece opinion, for instance, one says we ask you to bless us all with everything we do here tonight. We'll move you to welcome us one day into your kingdom as good and faithful servants. Mr. Lynn, does it matter for purposes of your analysis, is there an analytical distinction between prayer that is sectarian and prayer that is proselytizing or proselytization, if that is indeed the noun? Because I lost the thread a little bit in Ms. Newton-Ho's argument. She appeared to concede at first that some of the prayers may be characterized as proselytizing, but then quickly directed the analysis, labeled it as sectarian, and I thought to some extent said that that was not an appropriate part of the analysis, that the only distinction, in fact, turned on who was giving the prayer. So if you could sort of help me understand when you're using the term sectarian, when you're using the term proselytizing, and what difference it makes for purposes of your discussion. Of course, Your Honor. And from our point of view, at least from the purpose of the state amici, I think the only way to make sense of the Greece distinction opinion and the sectarian versus proselytizing is I think proselytizing has to be something along the lines of the definition that Ms. Ho gave, which is attempting to convert someone over to your religion, and I think it has to be, Your Honor, something that does not require parsing the theological content of a prayer, and the reason for that is because while we are dealing mostly in these types of cases with Christian prayers, something with which many people might be familiar, what if we had, for instance, a Wiccan prayer? How would we know whether that is... Okay, but let me, if I may, and I apologize for interrupting, but you're running out of time. Why does it matter? Because I understood, and this is where I'm a little confused. As I've understood it, the prayer or the comments or invocations in town of Greece, which are not necessarily Christian in nature, could also be understood to be proselytizing of a particular faith or belief. So as I analyze it, and please correct me where I'm wrong, what the question ultimately turns on is who's the giver of the invocation, the leading of the whatever is said, not so much the nature of what is said. So if you could help me put that into a context I understand, I would appreciate it. I think that's right, Your Honor. I think, as Ms. Hodes said, the critical and sole distinction between this case and Greece is that these are lawmakers who are giving the prayers, which wraps up a lot of things, the lawmakers giving the prayers, the lawmakers saying let us pray. Right, and I think that's very helpful. And why, for purposes of my analysis, isn't that the critical distinction, that in town of Greece people were invited, anyone could be invited regardless of belief, whereas here it was only the limited set of people who were, in fact, decision makers. Your Honor, my time is about to expire. Thank you. Again, I think we would answer that in two parts. I think the first question is the first part of town of Greece 2A. Does the fact that it's lawmakers giving a prayer make this a practice that crosses the line into promoting a particular religion? And then secondly, even if not, is it coercive? I think the answer to the first part is you look at tradition. Is there a historical tradition of this? And you also look at the outlines, the meets and bounds, that the Supreme Court has derived from tradition. And in Judge Agee's majority opinion, he had highlighted a couple of those, that there has to be nondiscriminatory policy, that there can't be this supervision and scripting of the prayers by the body. And I think if you apply both of those things to the first part of the test, there is a long tradition of lawmaker-led prayer. We cited some, the West Virginia Statehood Convention, the Virginia Ratifying Convention, the South Carolina Provincial Congress. When you look at that tradition also, it's clear that this value of protecting religious faith of all kinds was embodied in two constitutional clauses, not just one. And it seems to me that the founders, when they were enacting those two great religion clauses, were aware at that point in time that the history of religious bigotry and the history of religious persecution had been against members of minority faiths. And the founders wanted to cut that thing off at the pass, that it didn't light a way forward for our beautiful country. And there's no danger, really, that a religious minority is going to establish a prevailing faith. And there's no real danger that the majority is going to be deprived of its right to free exercise. But those two religion clauses, they were aware of people who had come to this country because their faith had been persecuted in the land from which they came. And what animated those two great provisions was, we don't want a repetition of this. This isn't going to happen here. Now, I don't think for a minute that there's any religious bigotry or persecution in these prayers. Nothing like it. But at the same time, to carry forward the framers' vision, it would seem to me that the prayer practice would find among many options some way of saying to members of a minority faith, you're welcome here. And maybe it's through diversity of prayers, and maybe it's through non-denominational prayers, or maybe it's through guest ministers giving sectarian prayers, or maybe that's not an issue here. Maybe it's just words of religious welcome, but something that dispels this message of religious exclusion that is being sent to members of minority faith because that just seems to me to go against whom the framers, back in their day, were trying to protect. It's about religious minorities. They said it not once but twice. They wanted to protect it in two different ways. And so when we get into the tradition of it all, isn't an open embrace of religious minorities most consistent with the establishment and free exercise clauses? If I may, Your Honor. I think Justice Kennedy has answered that balance, and I take your point, Your Honor, about the two clauses. But I think his answer to that, it comes back to this presumption of the reasonable observer and what the reasonable observer understands based on the tradition, which is that there is a presumption that you don't have to participate, that you are welcome if you are of a minority faith. And it's because legislative prayer is unique, and that's why there is this separate line of cases that addresses this and that you don't apply the usual establishment clause analysis. Thank you, Your Honor. Let me just ask you one question. Yes, Your Honor. Do you agree with the question just asked you that the establishment clause was intended to protect against persecution, religious persecution? Was that ever part of the discussion of that clause? No, Your Honor. I'm sorry. I understood. We'll continue to be addressing both clauses. There's free exercise clauses. Both clauses, the free exercise was not addressing that either. The free exercise was reinforcing a practice, but the establishment clause was focusing on the benefits and funding of religious sects, and there was an argument among which sects should be favored. The states favored. They paid clergy. They bought land. They supported the building of churches. And the founders decided to get out of that practice and say we're not going to have any establishments. All religions are going to be treated equally. Isn't that where it came from? That's correct, Your Honor. Judge Shad, I know you're sort of disadvantaged. Do you have a question? I do not. Thank you.  Thank you so much. Thank you, Your Honor. Your Honor. Good morning, and may it please the Court. Chris Brooks for Plaintiff's Appeal leaves. While remaining a fact-sensitive inquiry, the County of Greece gives examples of impermissibly coercive prayer practices. As Judge Wilkinson highlighted in his opinion, time and again over the five-and-a-half years in the record, Roland County exemplifies the practices that Town of Greece warned against. Not only is this case a conceptual world apart from Town of Greece, but also, as Judge Wilkinson noted in his opinion, Roland County has conceded that this case is without precedent. First, these are not simply solemnizing prayers. These prayers are directed at the public and promote religious observance amongst the public. How are they any different from the prayers in the record in Greece? There were plenty of prayers in that record that did the same thing and more. There are a number of differences, Your Honor. First, the legislators direct, compose all of these prayers, write and draft all of these prayers. Legislators are exclusively delivering these prayers over the five-and-a-half years. Is there any difference in the content between the two cases? Yes, I do think that there is a difference in the content of the prayers in the two cases, Your Honor. There is a much deeper record of proselytization and advancement in the record in this case. But the primary argument that we're making, Judge Agee, in this case,  but based on coercion and how all of these factors interact to produce a coercive environment. So your coercion is based upon the speaker, not the content? The content is not determinative. I think the content does bear keeping in mind under these circumstances. The controlling opinion in town of Greece focused on the fact that there was some prayer diversity. But yes, one of the key factors here is the fact that over a five-and-a-half-year period, the only people who were praying in Rowan County were elected officials. That goes back to Judge Gregory's question in mind to a certain extent. It's the speaker, not the content. That is the primary argument that we're making this morning, Judge Duncan. Mr. Brook, can prayer by a legislator ever be constitutionally permissible if it's given in a local government setting where the prayer giver is a decision maker? Can that ever be constitutionally permissible from your perspective? Yes, I believe, Joanne, from the district court's perspective, if that prayer is very plainly not designed to promote observance amongst the public, that is that it is exclusively an internal prayer for the commissioners in Rowan County. Can it be sectarian and accomplish what you answered to Judge Keenan? Yes, I believe a prayer practice that was exclusively aimed at the commissioners and was not designed to promote observance amongst the public. And is sectarian? And is sectarian. I think you're allowed to pray in your own particular idiom under those circumstances. How do they do that, in your view, to make it constitutional? Do they have a cone of silence to send over the board while they pray? Do they tell the public not to pay attention to them? What are they supposed to do, in your view, to make a sectarian prayer constitutional? I think there are a number of things that they could do, Judge Agee. I think, as Judge Wilkinson suggests in his panel dissent, that a notice, which is what Rowan County is actually doing right now, that these prayers are solely for the benefit of the commissioners would assist in that effort. They could also avoid doing what they've done under these circumstances, which is repeatedly talk about these prayers as being for the benefit of Rowan County, the citizens of Rowan County, a tradition for our citizens, in the words of Commissioner Barber. I recall from the panel argument, you objected, or whoever was arguing for that side, that they couldn't even pray for wounded troops. And that certainly was a prayer that was in account of Greece, that they couldn't pray for rescue squad workers who'd been injured, for police officers who'd been injured, because that extended beyond the members of the board. No, Your Honor, I don't think recognizing that there's a world outside of yourself means that you're attempting to promote religious observance amongst the public. Obviously, these commissioners have their own concerns that they can state, and they can state that they wish the blessings of the troops who are fighting for us in Afghanistan. That does not mean that they're promoting observance amongst those who are in attendance on that evening, even if those troops were in attendance on that evening. You focus a lot on the content of prayer, and you keep falling back on the content of prayer, as many people here are arguing. And it seems to me that if you just take candidly the prayers that the Supreme Court confronted head-on in town of Greece, that the prayers were invoking the strength of Jesus Christ's resurrection at Easter, that they were saying that this is the way to salvation, they invoked the cross, all of these very same words and same clauses that are involved here were invoked in town of Greece, and it was 100% Christian. Now, the question I have is, if that was troubling to the court, why didn't the court say so? The court said, we're not going to look at the practice unless it goes and infringes on the practice of other prayers, in other words, the idea of proselytizing or denigrating. And it said that none of those prayers reached that threshold. Now, I don't know how we get around that in terms of content. I think you have to focus on something else other than content. You have to assume that every one of these prayers was acceptable within the Christian religion as a matter of faith for the prayer speaker, and so that you're left with the argument that a prayer spoken by a legislature, instead of spoken by somebody hired by the legislature, makes it unconstitutional. Yes, Your Honor. First, the prayers that were delivered in town of Greece were not 100% Christian. They were prayers given by... They were 100% Christian until the complaint came. And then there were two prayers after that, one from a Wiccan and one, I can't remember the other, Jewish, I think. There's a Jewish, a Baha'i, and a Wiccan prayer that were delivered after... They were addressing a practice that was 100% Christian at that time. And the town of Greece, they expressed, they said that that wasn't a problem. Not only that, Kennedy pointed out that even aberrations in the prayers that didn't follow these guidelines would not defeat the practice. Part of the reason that there was able to be that prayer diversity was obviously because it was not the elected officials who were delivering the prayers, so that there could be, when there were concerns that were raised, some sort of efforts to address those concerns. But Justice Kennedy's opinion goes out of its way to note that there was prayer diversity that occurred there. Part of the problem is when you combine the fact that legislators are giving the prayers, not just doing it internally, but they're seeking to involve the audience in the prayer exercise, that's another factor that you have to consider on the town of Greece. Town of Greece explicitly says that. One of the things that concerned me when this case was heard before the panel was I was afraid that, you know, we have a more and more religiously pluralistic country. And it seemed to me that the Establishment Clause and the Free Exercise Clause would suggest that as America becomes more diverse religiously and more pluralistic religiously, that we don't want to do things that drive yet another wedge, one more wedge among our citizens, this time over something as sensitive as religious faith. And I expressed the concern that this prayer practice and the desire to continue to pray in the name of one faith would seep into the political arena and become a source of division there, and that this would operate as a debit for members of minority faith who sought public office. Now, there was a footnote in your supplemental brief that seemed to indicate, based on public newspaper accounts, that this has already happened, that this was a major issue. And the issue is whether the candidates were going to continue to pray in the name of Jesus. And the ones that supported that were the two candidates that won. There were four candidates. There's one of the commissioners. He questions what might happen if the commissioners weren't allowed to use words such as Jesus in prayers at the start of the meetings. So it bothers me that we're on our way to making a willingness and a desire to pray in the name of the prevailing faith a test for public office. And that just seems to me to go in the wrong direction from the way in which the country is moving, which is to become more religiously diverse and one host, more religiously welcome and inclusive. And what my fear was is coming to pass. Yes, Your Honor. This has been a point of great controversy in Rowan County, and it has become an electoral issue and has become, in the 2016 election, it did serve somewhat as a litmus test. And those dangers are particularly pronounced, amplified when you have a system. Mr. Brogan, I'm on TV over here in front of Judge Stack. Good morning, Judge. Good morning. Then would you like this court to order the good people of Rowan County to start electing some non-Christians? No, Your Honor. I don't think that that is necessary. But Judge Wilkinson's point that this directed prayer practice that is aimed at promoting religious observance amongst the public by the elected official courts the exact divisions that the Establishment Clause is designed to put out. Okay. Then would you prefer the remedy to that, that all prayer, all prayer at all times just be eliminated? Wouldn't that serve your purpose? No, Your Honor. No, I don't think that that is necessary. And I think Judge Wilkinson— When I say necessary, I said wouldn't that serve your purpose? If there would be no prayer in the council meeting at all, then there's not any pressure on anybody at all. A legislative prayer practice does not need to result in the sort of division that has happened in Rowan County. I'm not arguing for eliminating legislative prayer. The Court has been very clear that there is a history of legislative prayer that dates back, you know, before the founding of the Republic. What is different about this circumstance is that you have exclusively legislators delivering these prayers. Well, do you differentiate—this goes back maybe to Judge Keenan's question— do you differentiate, and if so, how do you do it, between exactly the same prayers we have here delivered in a local government as opposed to the state has? Your Honor, I think there is a difference. I don't think it's determinative. Well, what is it? I think the difference is that when you're in a very intimate setting where there might be, as is the case in Rowan County, 10 or 15 people there that evening, they would know and perhaps be known by the commissioners who are going to adjudicate a zoning variant later that evening that they are seeking, that that is both a different— Well, how is it different than being in the chamber, say, of the Virginia House of Delegates, where you would be facing the gallery, which is as close as right over there, some of whom are seated on the floor, and they're going to be voting on bills that those constituents are very interested in that day. So first, there obviously are going to be votes that are taking place in the Virginia House for Commons. The interaction there on that same day is not the same, in my understanding, because in Rowan County you would stand up and talk about your zoning variance request right after the prayer occurs, and then they would vote on that the same evening that they've encouraged you to join in with them on prayer. So the legislator stands up in the well of the House and gives the prayer. They're looking right at the gallery. And as soon as that ceremonial prayer is done, they commence the calendar, and their vote is going to be on a zoning issue that all those folks are there for. How is that any different? I think in that circumstance it's much closer to what is transpiring on a weekly basis, on a monthly basis. In Rowan County, it's obviously a much larger setting, and the sort of interaction and knowledge between the parties is going to be different. Even if they've done this for 200 years, now there is a constitutional infirmity to it. Your Honor, I think we look at the specific prayer practice, and there's not any evidence in the record. The prayer practice is the same prayers that are in the record in this case. Does that make the state legislative practice unconstitutional in your view? If you have five and a half years of legislators at the Virginia State House exclusively delivering the prayers, directing those in attendance to participate in the prayers, talking about the prayers in a sense that it's claimed that this is to promote religious observance for the public, signaling disfavor on occasion for dissidents from that prayer practice, then yes, I think you have a constitutional infirmity under those circumstances. How do we distinguish between what is implicitly coercive and what is not, what is simply tradition? Because it seems to me that you're getting into the problem of perhaps parsing some of the prayer. I understand the setting, the intimacy of the local government setting, the decision makers giving the prayer, but how would you tell us to make the distinction between what's implicitly coercive and what is not? Your Honor, I think Count of Greece lays out in Justice Kennedy's controlling opinion a number of factors that need to be taken into account in assessing whether there's impermissible coercion and indirect coercion, which is plainly still unconstitutional per Justice Kennedy's standard, and those factors include whether the legislators are exclusively supervising this prayer practice, whether they're directing participation, whether they're drafting and editing the prayers all of the time, whether they're promoting religious observance amongst the public, and whether they're signaling disfavor on occasion for dissidents. Are these prayers proselytizing, the ones that you've heard quoted by various members of the Court? There are prayers in the record that are proselytizing. Okay. Which ones are proselytizing? Your Honor, on November 16, 2009, I'm just reading a portion of the prayer in question. Please pray with me. Heavenly Father, all too often we have not recognized the mission you would have us to do to transform our small portion of the world through your will. We have trusted our wisdom instead of the wisdom of the Holy Spirit. May we always speak your will above our wills. That's just a portion of it. Okay. What's proselytizing about that? To transform our small portion of the world through your will. There's a prayer that was delivered on December 3, 2012, by Commissioner Ford. I pray the citizens of Rowan County will love you, Lord, and they will put you first, Lord. Their variants on prayers and proselytizing and advancing are listed in 2A as being problematic. How are they qualitatively different than the prayers that were in the record in Marsh and Greece? I think that there are more of them, Your Honor, but I want to be clear. The first and foremost argument that we're making here is not that the content of the prayers is relevant, but it is not the exclusive or even the primary argument that we are putting forward here. There are certainly prayers that are qualitatively and quantitatively more proselytizing and advancing. I guess we have to ignore Town of Greece's instruction about what they conclude is a prayer. They do not want to get into the content except to the extent that the prayer denigrates nonbelievers or religious minorities, threatening damnation or preaching conversion. That's what the Supreme Court said. And these prayers that you're talking about don't do that. As a matter of fact, they are almost identical in language to the prayers in the record in Greece and in Marsh. And I must say, your analysis of the content is just the problem that we would get into. We would be policemen. Courts would be policing the prayers that private persons give or public officials give in connection with their religion and to their God. And it seems to me if we're going to preserve this practice that's been over 200 years going now, we can't get into the content analysis of prayers. We can't police them except to the extent we're threatening damnation or interfering with other persons' views. But the notion that people are uncomfortable with this has been rejected. It's the idea that each person has the right to say these prayers, and each legislator has the right to say these prayers. And I have trouble if you're constantly going back to the content of these prayers and arguing that the content, and that's disputable, and of course it's always going to be disputable about the content of prayer. You get into the saving grace of Jesus. That's the core of the Christian tradition, that you may have the same saving grace of the God of Abraham, Isaac, or Jacob or Allah. It seems to me we just can't get into that. So then the question comes is when somebody comes to a public forum and understands that the prayer is going to be given by the legislator instead of by someone retained by the legislator or appointed by the legislator, that person comes up with the expectation a prayer is going to be said. And that person would prefer it not to be said, but they can leave, and in this case they can stay seated, or they can just stand and not participate. But to say it's unconstitutional just seems to me to rub against this longstanding tradition of this country in doing this. Your Honor, I don't think you need to police the content of these prayers to know that they're across the line. By the standard that you articulated in your dissent and joiner, you noted in that case that the prayers were the free choice of religious leaders composing their own invocation without any control or review of the content by the county. We have exclusive control and review by the county. No, by the county legislator, not the county. They didn't pass any law or adopt any policy in this case. The record is totally free of any rule or regulation that requires that the prayer be Christian or that it be of any particular form. Here we have a legislator selecting and composing his own prayer and delivering it. You're saying that because the legislator is doing this as opposed to someone else in the body, that it's now unconstitutional. Your Honor, the town of Greece speaks of town leaders. It doesn't just speak of legislators, legislatures. It speaks of town leaders. Let me ask you this. What would you have us do in this case? Let's assume you can design the order that we issue. What is the order you want us to issue? I think you can simply affirm the district court decision, which enjoins the prayer practice that was described. You're not trying to police anything. Justice Kennedy says you have to take a look at it. People say, oh, if you even decide the case, you're policing. We're not policing anything. We're not saying that people can't draw up their own prayers. They have a variety of options of how to go about it, none of which we would dictate. We're faced with a very narrow question about whether the totality of the circumstances as enumerated in the town of Greece, whether the prayer practice is constitutional. But to say that to look at the record of a case is somehow policing this sort of prayer is almost to say that the courts have no role. And the point you're making is a very narrow one, that this case is without precedent, that no one can cite anything quite like it, that legislators are giving the prayers, that the prayers have been given over a period of five years or more, all in the same faith, that it takes place at the most intimate point of contact between citizens and their government, that there are requests for audience participation that require someone, if they don't go along, to stand out right before the very people who will be shortly, and quite shortly, ruling on their petition. And your point is that taking all those factors together, and courts have a right to take them together in order to decide the case. Are we policing going forward? Absolutely not. There are a variety of options here for legislative prayer and for opening meetings with invocations. But if this practice spans, then, you know, I really don't know where we go from here. I really don't. Let me just ask one last question. Just a reminder. Have you finished your draft of your order of judgment? That's what I wanted to get to. I guess I wanted to finish that. You were drafting your order of judgment in your favor. I have not done that yet, Chief. Everybody wants to do it. I'm ambitious. I'm not that ambitious. Well, what would you have us say if you could? I think you can simply say that you affirm the ruling of the district court. Okay. Now, would the practice that is the district court held unconstitutional, the Judge Wilkinson, in his dissent, had a little welcoming provision in the beginning of his dissent that said, we welcome you and we say a prayer and welcome all faiths and so forth. If they adopted that, would that solve the problem? Not if every other factor that is relevant in this case remained exactly the same. What would you change then? That's what I want to understand. Well, I think that you have to just consider the totality of the circumstances. Tell me what you would change. They want to say some prayer. Now, tell me what you would change to let them say their prayers. Are they in compliance with the judgment of the district court? Your Honor, pardon me? Is Brown County in compliance with the judgment of the district court? Yes, they are currently. They have been complying with it? Yes, Your Honor. And there's trouble about that. There's no doubt about that whatsoever. They are complying with it right now by having a volunteer chaplain come in and deliver prayers that are in a sectarian idiom on occasion. They state that those prayers are for the internal consumption of the board, and that is fully compatible with what is. No, Your Honor, because the litigants, Rowan County continues to defend its prior prayer practice, and in talking about Judge Wilkinson's message of inclusion states, you know, we might do this, but it's not constitutionally obligatory for us to do this. It's not constitutionally obligatory, do you? No, I do not believe that it's constitutionally obligatory. It might be a good idea. I think it would lessen the coercive pressure. There are many different ways to have a legislative prayer practice that comport with. It's really our goal, hopefully in every case, but particularly in an en banc case, that we're not just dealing with how do we resolve this case. We're looking for a principle. So I want to go back because I'm still not sure how to distill the principle that you would say governs the case. So we've talked about a state legislature. Let's assume exactly the same prayers in the United States Senate, given only by members of the Senate. They face the Senate and the gallery, exact same prayers. Is that a constitutional practice in your view? Your Honor, you have to take into account other factors. The totality of the circumstance is tough, so you have to look at whether the legislators are directing prayer participation. Exactly the same prayers we have in this case. Well, exactly the same. But the content of the prayers is not determinative. You have to look at the structure of the prayer practice, and you also have to look. You can watch on C-SPAN and see how big the Senate chamber is. So is that the differentiating factor? No, I think the differentiating factor, and to get to the broader point of how you provide instruction, first, 2A stands for the principle that you can't engage in a pattern of prayers that are exploited to advance or proselytize. 2B stands for the idea that you can't engage in a coercive prayer practice. So it's exactly the same prayers given only by members of the United States Senate. So is it your view that the Fourth Circuit tells the United States Senate that their practice is unconstitutional? If the Senate, and I don't think this is happening right now in the Senate. Your Honor, it's a hypothetical. Yes, Your Honor. Apparently there have been prayers delivered there in the Senate by members of the Senate for over 200 years. So is it a constitutional or unconstitutional practice? If the Senate adopted the same prayer practice and structure as Rowan County has in this case, then that would be unconstitutional. But you don't need to opine on that. Your position is you have a very specific prayer practice before the court, which doesn't involve the United States Senate, but involves a meeting of the Rowan County Board of Commissioners. We're bounded by the record. And the town of Greece says we're supposed to be very particularized in this. There's no need to speak broadly. There's no need to weigh in on hypotheticals that are not before us and may never exist. We have what is a concrete case with a concrete record, a well-developed record, and that's all the district court ever did was opine on that, and that's all we need to do. And Judge Wilkerson is right on that, at least from the perspective. The question before us is not what goes on in the Senate or what would be right in terms of what they could do there. The question is, is this correct? If that was done, we wouldn't even be here because the Supreme Court would have told us, you can say these things. You cannot say it in those places. We don't operate like that on the court. We've handled a controversy before us. I will say this. The whole notion of tradition, something has existed for 200 years, offends me. It offends me because I don't think tradition and policy should govern whether something is beyond the reach of the Constitution. Certainly, if that was the case, we still have slavery in this country right now. And it took a constitutional amendment to even get rid of it, but the whole idea that the courts cannot address it because of tradition offends me from that perspective. But let me answer this in terms of the confluence of content and the speaker. If the speaker has a high degree of content that reflects a particular religious denominator, and if that speaker makes it very clear that this is personal, this is not reflected on you, I don't expect you to hold my beliefs to any degree whatsoever. I'm thinking of many legislators and many county commissioners are in fact ministers. And you know what their religious convictions are when they're on that stand. And if they give a statement in terms of religion, it's almost like the guest minister. And I don't like the differentiation between the guest person and the legislator so much when the focus, in my view, should be on what is the intent here and how are you portraying it. Are you saying, everybody join in with me and let us all pray together, and now let's go into this particular religion. Here again, in many instances, and I know this because I know in Baptist churches this happens every Sunday, but you know you're preaching to the choir. Most of the folks out there in that audience are of your faith. It is a political thing. It has nothing to do with religion. All of this talk about what you can do for religion. This is really about politics from this perspective. I know what this is, and everybody in this room knows what this is about. It is about you have an audience out there in which you know that the majority of them that vote for you and support you are of this faith, and you are. Maybe proselytizing is not the word, but you're certainly getting to the point of saying, hey, those who are not of this faith, I'm not going to give you the kind of attention here because I'm trying to direct this to those who are of faith like I do. If it is personal, does it matter how much of the content? If the minister says, I want everyone to know this is my faith and this is what I believe in, I don't expect anything, I recognize other faiths are here, and if I give a prayer, it is my prayer to the God I believe in, and it's no more. That's religion. Religion is not just saying it for the purpose of trying to get someone to join in with you and sing along with you on a song that you like to hear because you like getting elected or because there's some other purpose in it. Your Honor, I see that I've run out of time. No, but you may answer Judge Wynn's question. Your Honor, there's a lot there, and I want to try to touch on all of it. The circumstance that you've described there would seem to indicate that the legislator in question was not directing the public to participate in those prayers, that he was not editing or drafting those prayers for public recitation, that he was not promoting religious observance amongst the public. That is quite different than the facts of this case, first. Second, the count of briefs is clear that while we take into account history, tradition in and of itself is not determinative. And if you look at the record in this case, there is no history whatsoever going back 200 years of prayer practices like they have in Rowan County. This court should not welcome this fact pattern into the constitutional fold due to its consequences within Rowan County and beyond. For those reasons, we ask the court to affirm the district court ruling in joining Rowan County from returning to its coercive prayer practices. Thank you, Mr. Brooks. Thank you. Ms. Holt, you have your time reserved. Thank you, Your Honor. Two points. Judge Duncan, I would appreciate the opportunity to clarify in terms of I do not concede that any of the prayers here are proselytizing. And I did not mean to suggest that. My apologies. I just wanted to be sure that I was clear. You said accepting the fact that they are, as you made your argument in chief. Assuming arguendo. Assuming arguendo. Correct. I did not take it as a concern. Correct, correct. But thank you for the opportunity to clarify that. And the reason that we know that none of the prayers are proselytizing is because they are virtually indistinguishable from the prayers offered in the record in Town of Greece and in March. And it is my friend's burden to show a pattern over time of prayers that exploit the prayer opportunity to one that preaches conversion or threatens damnation. And we don't believe the record in this case or the argument comes close to securing that burden. It sounds to me like you're saying we do have to look at the content, but the content is really pretty much the most important thing about the prayer practice that we look at. No, Your Honor. I respectfully, strongly disagree with that. Okay. Well, we keep talking about the content. Well, the content is at issue because my friend is using examples of prayers to show proselytization. Well, you both are. You both are. And that you're leading right back into the area of concern for me, because to the extent that Lemon v. Kurtzman has any continuing vitality, one of the things at issue there is the excessive entanglement of government and sort of the substance of the practice. So it doesn't seem to me that that should be front and center from the perspective of either you or your good colleague. Well, we know that Lemon is not applicable to him. I take your point. It may not be applicable to anything anymore. The only point I'm referring to is the concern that gets into the policing issue that might arise. I'm only referencing it for that reason. I take your point, Your Honor. I think, and certainly Tom Greaves doesn't teach that the content of prayers are never relevant. It does say the judges are not to parse prayers. Yes. And I think a necessary implication of that is when you have a prayer practice that over time is exploited to preach conversion, spread tension, all of these are things that should not require a line-by-line discussion back and forth of the content. You're really going in the wrong direction. Are you not getting that sense perhaps from the question, that you're leading us further back into the quagmire that's simply going to engender additional discussion about what about this language and what about that language? No, Your Honor, and I'm trying to lead Your Honors out of that quagmire by saying wherever the line may be that crosses over from a permissible prayer practice using the guideposts and the examples in Town of Greaves and in Mars, wherever that line may be, this case does not cross it. That is my primary position, Your Honor. Ms. Hogan, are you saying that a prayer practice can never be implicitly coercive? It sounds to me from your examples of proselytization it has to be explicitly coercive. From your perspective, then, can a prayer practice ever be implicitly coercive? If I understand Your Honor's question to be by implicitly referring to justice, the analysis set out in Justice Kennedy's opinion in 2B, in other words, can a prayer practice that satisfies 2A cross the line in 2B? Yes, I think that is the teaching. That is the teaching of Town of Greaves. We're not arguing that a prayer practice can never. Our argument is that a prayer practice does not cross that line. In regards to implicitly coercive, your examples have been quite explicit, and I want to know if you agree or disagree that a prayer practice can be implicitly coercive, not threaten people or denigrate them over time, but implicitly can it be coercive? To the extent that your question, Judge Keenan, and I apologize if I'm not tracking. Could you just please answer the question? Can it be implicitly coercive? To the extent implicit refers to Justice Kennedy's guideposts of Levi Wiseman. In other words, are people being prohibited, say, from leaving during the prayer? Excuse me, when someone, to avoid the prayer, has to wait and can't enter the room until later or has to sit down instead of stand up or has to leave the room, and in some way, whatever they do, they make themselves stand out in a way that the commissioners would not reflect favorably upon, why wouldn't those options, such as they are, of leaving the room, staying seated, not coming in until a certain time, why wouldn't they serve to marginalize and distinguish? And when a majority does something, and a majority does something at the behest of the elected officials, you are under pressure to conform. And if you don't conform, you stand out noticeably. And you stand out in front of the very people who have, meeting after meeting, made reference to the same faith, their own faith, the faith of the majority of the people in Rowan County, and you are forced to differentiate yourself, to stand out. And why isn't that an element that can be taken into account, and why isn't that, along with all the other things I might add, a coercive factor? I certainly would feel that way. I would feel very uncomfortable about it if I had to get up and leave the room. May I respond? You may answer. Thank you, Your Honor. Respectfully, Your Honor, I believe that Justice Kennedy's ton of grief morality to me directly addresses that, directly addresses that by saying the distinguishing between the situation in Levy-Wiseman, where children were an issue, that where we are dealing with adults, that the ability to either leave the room, and, again, on this record, JA-15, the record is that only most stood, not all stood. But regardless of the factual record, I think Justice Kennedy's morality is clear, that it is not asking too much. And, again, I don't mean to diminish feelings of discomfort or offense, but I think Justice Kennedy could not have been clearer that those feelings do not rise to the level of unconstitutional coercion. I see that my – Could I just go back to something that Judge Agee brought up, and he's getting the passing, and I take it that he knows this, that members of the legislature of Congress have for 200 years been part of a prayer service. Do we have evidence that the members themselves have led these prayers for 200 years? Specifically, I'm interested in the first Congress, because that seems to be what Marsh was looking at. Have you found any? I'm sure you've done, and you've had a lot of friends doing a lot of research here. Is there evidence that members of the first Congress led prayers? There is evidence that members who were also ministers did lead prayers. I don't want to – I'm going to answer candidly. There's evidence that ministers led prayers. Members who were ministers did lead prayers. But there are members that were not ministers. I'm not aware of any exclusive practice, but certainly members did lead prayers from the founding, and again, my friend, the Solicitor General's brief does go in and delineate the history of legislator-led prayers. Okay. If I understand correctly, the nutshell of your argument is that given that the prayers in Tallagrace and here, and I don't think there's been much dispute about it, it's almost the same, or substantially the same, that the only way you lose is that being a legislator-led prayer must be so distinctive and coercive and almost that per se. Is that basically your argument? I think that comes very close to it, Your Honor, and I believe I understood my friend on the other side today to say that he doesn't disagree, that there can be legislator-led sectarian prayers. So in our view, that does resolve this case.  Thank you so much. Thank you. Thank you, counsel, for ably arguing before the court, and we'll come down and greet counsel, and then we'll ask for just a recess from the court. Please rise in maintaining this honorable court to take a recess.
judges: Gregory, Wilkinson, Niemeyer, Motz, Traxler, King, Shedd, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris